```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/10/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REGINA CUNNINGHAM and STACEY WELLINGTON,

                          Plaintiffs,

-against-

CVS HEALTH CORPORATION, CVS PHARMACY INC., VILLAGE OF PELHAM MANOR, and RONALD RIZZO, SHANNON PRIOR, CHRISTOPHER PIMBLE, and JEFFREY CARPENTER, *in their respective individual and official capacities*,

                          Defendants.

No. 23-cv-1328 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

       Plaintiffs Regina Cunningham and Stacey Wellington bring this action against Defendants CVS Health Corporation, CVS Pharmacy Inc., Ronald Rizzo, Shannon Prior, and Christopher Pimble (together, the "CVS Defendants"); Village of Pelham Manor (the "Village"), and Jeffrey Carpenter ("Defendant Carpenter") (together, the "Village Defendants"). Plaintiffs assert claims for (1) violations of their constitutional and civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983"); (2) gender/sex discrimination in violation of the New York State Human Rights Laws ("NYSHRL); and (3) negligent infliction of emotional distress.

       Presently before the Court are (1) Defendant Carpenter's Motion to Dismiss; and (2) the Village's Motion to Dismiss. (ECF Nos. 77, 79.) For the reasons stated below, the Court grants Defendant Carpenter and the Village's motions to dismiss without prejudice.

## BACKGROUND

       CVS employs individuals to work at their retail stores, including CVS Pharmacy Store 1959 (the "CVS Store") located in the Village of Pelham Manor (the "Village"). (FAC ¶¶ 16-18.) The CVS Store is in a business zone policed by the Pelham Manor Village Police Department

1

("PMPD"). (*Id.* ¶ 7.) At all relevant times, Defendant Jeffrey Carpenter served as police chief of the PMPD. (*Id.* ¶¶ 13-14.) In 2019, property crime, such as shoplifting, burglaries, and other non-violent crimes, accounted for 96% of all offenses in the Village. (*Id.* ¶¶ 8-10.) The CVS Store called PMPD more than 30 times to report suspected shoplifting, which was a point of embarrassment for Defendant Carpenter. (*Id.* ¶¶ 19-20.)

Cunningham and Wellington both worked as store managers at the CVS Store. (*Id.* ¶ 16.) Plaintiffs made a steady stream of calls to PMPD to report suspected shoplifting activity and reported the highest number of suspected shoplifting incidents in the Village. (*Id.* ¶¶ 19, 23.) Plaintiffs further allege that these high number of shoplifting reports negatively affected both the Village by increasing the PMPD's crime statistics, which caused PMPD under Defendant Carpenter's leadership to appear ineffective and Defendant Village to appear unsafe. (*Id.* ¶¶ 25-26.)

Plaintiffs' high volume of reports caused Carpenter to repeatedly call CVS's corporate office to complain about Plaintiffs and their reporting of suspected shoplifting. (*Id.* ¶ 26.) During the phone calls to CVS's corporate office, Carpenter used discriminatory and stereotypical language by referring to Plaintiffs as "girls, women, or ladies," voicing concerns about Plaintiffs' safety, and by alleging or implying the CVS Store's "all-women" or "all-girl" staff was ineffective or unsafe because they were female. (*Id.* ¶¶ 27, 45, 49.) Motivated by Plaintiffs' gender/sex, Carpenter (1) recommended the CVS Defendants speak with Plaintiffs to discourage, reprimand, or discipline Plaintiffs for making too many shoplifting calls to PMPD; (2) advocated the CVS Defendants install security cameras and/or hire security guards "to protect 'the girls'"; (3) complained about the alleged absence of sufficient safety measures for the CVS Store; and (4) attributed the high volume of suspected shoplifting activity at the CVS Store to Plaintiffs'

2

gender/sex. (*Id.* ¶¶ 28-31, 46-47.) Plaintiffs allege that Carpenter "engaged in a discriminatory campaign to get rid of Plaintiffs, both of whom he derogatorily and continually referred to as girls." (*Id.* ¶ 48.) After Carpenter began calling the CVS corporate office, Plaintiffs' employer allegedly began to investigate and single out Plaintiffs. (*Id.* ¶ 104.)

On April 9, 2020, Plaintiffs reported suspected shoplifting activity to the PMPD after they observed a man enter the CVS store, fill his bag with CVS merchandise, spit on them when they engaged with him, and then leave the store without paying. (*Id.* ¶¶ 117-122.) After the incident, Wellington left the building to recover from the confrontation, and while outside the building flagged down the police. (*Id.* ¶ 124.) On June 12, 2020, Defendant Ronald Rizzo, a District Manager of CVS who was responsible for the CVS Store, came to the store, and issued Plaintiffs a final warning prior to termination for leaving the building during a shoplifting incident. (*Id.* ¶ 133.) Plaintiffs allege they were singled out and terminated because of their gender and sex due to the pressure the CVS Defendants individually and collectively received from PMPD, notably Carpenter, about their reporting of suspected shoplifting activity. (*Id.* ¶¶ 152-153.)

On December 24, 2020, Cunningham reported suspected shoplifting to the PMPD after observing a known shoplifter enter the store, take CVS merchandise, and leave without her seeing the customer/suspect pay for his items. (*Id.* ¶¶ 155-157.) The PMPD stopped a person matching the suspect's description, searched his bag, and found a sales receipt that seemingly confirmed that the items were purchased at a different retail store. (*Id.* ¶ 158.) The PMPD thereafter allowed the person to leave. (*Id* ¶ 163.) On January 6, 2021, Carpenter called the CVS corporate office to discuss his concerns regarding larceny and Plaintiffs' multiple calls for service, including the incident on December 24, 2020. (*Id.* ¶ 165.) Defendant Carpenter's January 6, 2021 complaint was

at least the third complaint against Plaintiffs and their reporting of suspected shoplifting. (*Id.* ¶ 168.)

On January 12, 2021, members of the CVS corporate office met individually with each Plaintiff to discuss the December 24, 2020 incident and accused both Plaintiffs of violating the CVS Asset Protection Policy and Shoplifting Apprehension Guidelines. (*Id.* ¶¶ 159-166.) At the end of those meetings, Plaintiffs were suspended from employment pending review of the incidents. (*Id.* ¶ 166.) On January 14, 2024, Plaintiffs were terminated. (*Id.* ¶ 176.)

The CVS Defendants allegedly acted in concert with the Village Defendants, both of whom sought adverse employment actions against Plaintiffs because they exercised their First Amendment rights by complaining about and reporting suspected shoplifting activity. (*Id.* ¶ 208.) Specifically, Plaintiffs allege that due to Carpenter's complaints regarding their gender/sex, the CVS Defendants investigated Plaintiffs' reporting of suspected shoplifting activity and ultimately disciplined and terminated Plaintiffs. (*Id.*) Plaintiffs further allege that their alleged violations of the CVS policies were only a pretextual reason for their terminations, and the CVS Defendants sought to "get rid of" Plaintiffs to make Defendant Carpenter happy. (*Id.* ¶ 58.) As a result of their treatment, Plaintiffs suffered physical and emotional distress.

## PROCEDURAL HISTORY

On February 16, 2023, Plaintiffs commenced this action by filing the Complaint. (ECF No. 1.) On December 12, 2023, Defendant Carpenter and the Village filed motions to dismiss the Complaint. (ECF Nos. 45, 48) On January 19, 2024, CVS filed a motion to compel arbitration and to dismiss the action. (ECF No. 54.) On June 4, 2024, the Court issued its Opinion & Order addressing both motions ("*Cunningham I*"). (ECF No. 62.) The Court granted the motion to compel arbitration and the motions to dismiss. (*Id.*) The Court granted Plaintiffs leave to amend

their Complaint, which they did on July 15, 2024 by filing the First Amended Complaint ("FAC"). (ECF No. 65.) On November 13, 2024, Defendant Carpenter and the Village filed another round of motions to dismiss. (ECF Nos. 77, 79.) On the same day, Defendant Carpenter filed a Memorandum of Law in Support of its motion to dismiss ("Carpenter MoL"). (ECF No. 78.) Defendant Carpenter also filed a Reply Memorandum of Law ("Carpenter Reply"). (ECF No. 82.) On November 13, 2024, the Village filed a Reply Memorandum of Law ("Village Reply"). (ECF No. 81.) On November 14, 2024, the Village filed a Memorandum of Law in Support of its motion to dismiss ("Village MoL"). (ECF No. 83.) On November 13, 2024, Plaintiffs filed a Memorandum of Law in Opposition to Defendants' motions to dismiss (the "Opp."). (ECF No. 80.) Plaintiffs also included several exhibits, which they requested that the Court take judicial notice of ("Pltfs.' Ex."). (*Id.*)

## LEGAL STANDARDS

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere

conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at 662. A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## DISCUSSION

### I.    42 U.S.C. § 1983 Claim Against the Village

Under *Monell v. Dep't of Social Servs. of City of New York*, a municipality may not be liable through a theory of *respondeat superior* due to the actions of its employees. 436 U.S. 658, 692 (1978). Instead, a municipality can only be held liable for the actions of its employees if the harm inflicted was in the execution of its policy, practice, or custom. *Id.* at 694. Municipal liability requires "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). To satisfy the first element, a Plaintiff must allege either "(1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." *McLaurin v. New Rochelle Police Officers*, 368 F. Supp. 2d 289, 293–94 (S.D.N.Y. 2005) (cleaned up).

Here, Plaintiffs attempt to satisfy the first element of *Monell* by alleging that Defendant Carpenter was a "policymaker for the Defendant Village and for the Village of Pelham Manor Police Department." (Opp. at 8) (FAC ¶ 219.) Plaintiffs further assert that "[b]ased on Defendant Carpenter's position and actions, including his repeated calls to CVS corporate managers, his actions demonstrated crime enforcement policies of the police department." (*Id.*) As a result, Defendant Carpenter's calls to the CVS Defendants amounted to "a policy resulting in unconstitutional acts." (Opp. at 10.) In support, Plaintiffs provide the Court with minutes from the Village of Pelham Board of Trust Meetings that are available on the Village's government website. (*See* Pltfs.' Exs. 1-4.) Plaintiffs' argument fails.

Whether an individual is a policymaker is a question of state law. *See Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008). "The Second Circuit has made clear that 'where a plaintiff relies not on a formally declared or ratified policy, but rather on the theory that the conduct of a given official represents official policy, it is incumbent on the plaintiff to establish that element as a matter of law.'" *Albert v. City of Hartford*, 529 F. Supp. 311, 329 (D. Conn. 2007). Plaintiffs' proof amounts to a few sparse mentions of the CVS shoplifting incidents at a board meeting that Defendant Carpenter was present for and a conclusory statement that he was, in fact, a policymaker. First, the board minutes do not move the needle for Plaintiffs because they do not provide the Court with any basis to determine that he had final policymaking authority. The minutes only passingly mention the CVS Defendants and the shoplifting calls and there are no facts provided that show, as a matter of law, that Defendant Carpenter was the final decisionmaker. The minutes also identify a Police Commissioner Annunziata who Defendant Carpenter seems to answer to. Moreover, Plaintiffs' FAC indicates that "[a] five-member Board of Trustees governs the Village . . . with administrative and executive authority under local code, oversees day-to-day

operations." (FAC ¶ 6.) One of those trustees is Police Commissioner Annunziata. (*See* Pltfs.' Ex. 1 at 1.) All of this suggests to the Court that Defendant Carpenter did not have final policymaking authority, but that the Police Commissioner did. But even if Police Commissioner Annunziata is without that authority, the minutes do much less to prove that Defendant Carpenter is. Further, a few discrete calls to the CVS Defendants to complain of employees can hardly be described as making out an official enforcement policy much less a discriminatory policy on the basis of gender. And as the Court noted in *Cunningham I*, even if there were a policy, Plaintiffs have failed to provide the Court with a plausible link between the purported policy and Plaintiffs' termination. *See Ashby v. Cnty. of Nassau*, 351 F. Supp. 2d 30, 32 (E.D.N.Y. 2004) (holding municipality could not be held liable because plaintiff failed to allege a causal connection between municipal policy and the alleged violation of her civil rights despite plaintiff's assertion that the municipality encouraged her termination); *see also Regan v. Vill. of Pelham*, No. 19 CIV. 7987 (NSR), 2021 WL 1063320, at *6 (S.D.N.Y. Mar. 19, 2021) (finding a municipal corporation cannot be held liable for the actions of a school district because they are two separate and distinct entities). The FAC contains no facts that allow the Court to conclude that there is a plausible connection between the calls and Plaintiffs' termination and only leaves the Court with a large logical leap to connect the two. Despite being afforded the opportunity to amend, Plaintiffs' FAC remains built on speculation and conjecture wherein a police chief, so concerned about the crime rates and uncomfortable with women in leadership positions, pressures a private company to terminate two managers. Accordingly, Plaintiffs have failed to state a Section 1983 claim against the Village.

### II.    42 U.S.C. § 1983 Claim Against Defendant Carpenter

Plaintiffs allege that Defendant Carpenter deprived them of their Constitutional rights and bring this action pursuant to 42 U.S.C. § 1983 for redress. Section 1983 provides that "[e]very

person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... causes ... the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action...." 42 U.S.C. § 1983. Such a claim requires that "(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).

Here, Plaintiffs claim that Defendant Carpenter used his authority as Chief of Police to "coerce and encourage Plaintiffs' employers to terminate Plaintiffs and urge them to reprimand, discipline and discourage Plaintiffs from participating in their constitutionally protected shoplifting calls to PMPD." (Opp. at 8.) But this conduct falls within Defendant Carpenter's First Amendment rights for which the scope of permitted expression is broad. *See X-Men Sec., v. Pataki*, 196 F.3d 56, 69 (2d Cir. 1999) (explaining that insults that contain neither threats of coercion that intimidate nor fighting words that create the possibility of imminent violence must be tolerated). And one's employment in the government does not separate them from their right to speak. *Id.* Just as in *Cunningham I*, the Court finds that Defendant Carpenter's speech in the form of several phone calls to the CVS Defendants are protected speech and cannot form the basis for Plaintiffs' Section 1983 claim. The content of the speech simply does not rise to the level of threats or intimidation to hold otherwise. Accordingly, Plaintiffs have failed to state a Section 1983 claim against Defendant Carpenter.

### III. State Law Claims

Plaintiffs bring several other claims pursuant to state law—*e.g.*, negligent infliction of emotional distress and claims pursuant to the NYSHRL. Because the Court has dismissed

Plaintiffs' federal claims, the Court declines to apply supplemental jurisdiction to address the state law claims.

## CONCLUSION

For the foregoing reasons, Defendants Carpenter and the Village of Pelham Manor's (together, the Village Defendants") motions to dismiss are GRANTED. Plaintiffs' claims are dismissed without prejudice. Plaintiffs are granted leave to file a Second Amended Complaint by August 15, 2025. Plaintiffs are advised that the Second Amended Complaint will replace, not supplement, the Complaint, and so any claims that they wish to pursue must be included in, or attached to, the Second Amended Complaint. Should Plaintiffs file a Second Amended Complaint, the Village Defendants are directed to answer or otherwise respond by September 10, 2025. If Plaintiffs fail to file a Second Amended Complaint within the time allowed, those claims that were dismissed without prejudice will be deemed dismissed with prejudice.

The Clerk of Court is directed to terminate the motions at ECF Nos. 77 and 79.

Dated:   July 10, 2024                                      SO ORDERED:
         White Plains, New York

                                                            _____
                                                            NELSON S. ROMÁN
                                                            United States District Judge